

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/8/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JINXIONG CHEN and CHAN YIN LAU, *on their own behalf and on behalf of others similarly situated*,

        Plaintiffs,

-against-

DUN HUANG CORP, et al.,

        Defendants.

19-CV-11883 (GBD) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Jinxiong Chen a/k/a Jason Chen (Chen) and Chan Yin Lau a/k/a Jack Lau (Lau) allege wage violations at "Dun Huang Grand Central," a restaurant located at 320 Lexington Avenue in Manhattan. In this action, brought on behalf of themselves and others similarly situated, plaintiffs allege that they were employed by Dun Huang Corp (the Corporate Defendant), which owns and operates the restaurant, and by Shiyang Li and Yang Liu (the Individual Defendants), who own and/or control the Corporate Defendant, and that these defendants "have a widespread and long-standing policy of underpaying their employees' statutory minimum wages and willfully not paying their employees with overtime wages of at least one and one-half (1.5x) times the regular pay for all the hours worked in excess of forty (40) in a given week," as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*. Pl. Mem. (Dkt. No. 81) at 1; *see also* First Amended Complaint (FAC) (Dkt. No. 38) ¶¶ 2-3. Plaintiffs also allege that defendants misappropriated tips left for Dun Huang Grand Central's waiters, and that they violated the minimum wage, overtime, spread-of-hours, wage notice, and wage statement provisions of the New York Labor Law (NYLL) and its implementing regulations. FAC ¶¶ 3-4.

Now before the Court is plaintiffs' motion for an order: (1) granting conditional certification of plaintiffs' FLSA claims as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of all non-managerial, non-exempt employees who worked at Dun Huang Grand Central from December 29, 2016 (three years prior to the filing of this action) to the present; (2) directing defendants to provide a list of the names, last known addresses, telephone numbers, email addresses, and social media usernames of all potential collective action members, together with information about where, when, and in what positions they worked; (3) approving plaintiffs' proposed notice and consent form (Notice) (Dkt. No. 80-3), permitting plaintiffs' counsel to disseminate the Notice, in English and Chinese, via mail, email, text message, and/or social media, and to post it on counsel's website, and directing defendants to post it in their restaurant and include it in the pay envelopes of potential collective members; (4) ordering plaintiffs to publish the Notice, in an abbreviated form and at defendants' expense, on social media and in a newspaper (if defendants fail to furnish a complete contact list or if more than 20% of the Notices are returned as undeliverable with no forwarding address); (5) setting a 90 day opt-in period; and (6) tolling the statute of limitations for "90 days until the expiration of the Opt-In period." Not. of Mtn. (Dkt. No. 79) at 1-2; Pl. Mem. at 19-25.[1]

The motion is "within the scope of my authority under 28 U.S.C. § 636(b)(1)(A)." *Sanchez v. Salsa Con Fuego, Inc.*, 2016 WL 4533574, at *1 (S.D.N.Y. Aug. 24, 2016) (Moses, M.J.) (quoting *Nahar v. Dozen Bagels Co. Inc.*, 2015 WL 6207076, at *1 (S.D.N.Y. Oct. 20, 2015)); *see also Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3647604, at *1 n.1 (S.D.N.Y. June 27, 2016) ("Motions for conditional certification of a collective action under the FLSA are non-dispositive.").

---

[1] Plaintiffs' requests that the Notice be disseminated in English and Chinese and that it be included in the employees' pay envelopes (or be disseminated by "any other methods by which employees receive their paycheck information") are made only in their brief. *See* Pl. Mem. at 20, 23.

For the reasons set forth below, plaintiffs' motion will be granted in part.

## I.     BACKGROUND

### A.     Factual Background

Except where otherwise indicated, the facts in this Memorandum and Order are taken from plaintiffs' First Amended Complaint and the affidavits submitted in support of their motion.[2]

Plaintiff Chen was employed as a waiter at Dun Huang Grand Central for approximately four months, from on or about January 29 through on or about June 2, 2019. Chen Aff. (Dkt. No. 80-6) ¶ 3. Plaintiff Lau was also employed as a waiter at Dun Huang Grand Central, for approximately six months, from on or about March 13 through on or about September 26, 2019. Lau Aff. (Dkt. No. 80-5) ¶ 3. The Corporate Defendant owned and operated the restaurant. *See* Pl. Mem. at 2. The Individual Defendants were plaintiffs' "principal bosses," although they "delegated the authority to hire and fire employees to on-site managers." FAC ¶ 33(c). Defendant Li also "disbursed to managers pay to be distributed to employees." *Id*.; *see also id*. ¶¶ 17, 25 (alleging that defendant Liu was known as the "big boss"; that defendant Li was known as the "boss"; and that both Individual Defendants delegated the day-to-day management of Dun Huang Grand Central to "Andy," who is not named as a defendant herein).[3]

---

[2] At the conditional certification stage, courts "should not weigh the merits of the underlying claims," *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, where there is a conflict between the parties as to the facts underlying plaintiffs' wage and hour claims, I treat plaintiffs' attestations as true. *See Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

[3] Plaintiffs also allege, somewhat vaguely, that the Individual Defendants had some (unspecified) ownership interest in the Corporate Defendant. *See* FAC ¶¶ 16, 33(d); Pl. Mem. at 2 (asserting that Dun Huang Corp "owns and controls the operations of" the restaurant and that Li and Liu "own and/or control" Dun Huang Corp).

Chen attests that throughout his employment at the restaurant he worked either an early shift or a late shift. When he worked the early shift he was on duty six days per week, from 11:00 to 21:30, with a one-hour break, for a total of 9.5 hours a day or 57 hours per week. Chen Aff. ¶ 4. When he worked the late shift he was on duty five days per week, from 11:30 to 22:00, with a one-hour break, for a total of 9.5 hours a day or 47.5 hours per week. *Id.* The only "exception to this schedule" was that for three to four weeks (at an unspecified time), Chen worked for five days rather than six days per week. *Id.* ¶ 6.[4]

Throughout his employment, Chen was paid a flat rate of $900 per week, Chen Aff. ¶ 9, with $160 by check and the remainder in cash. *Id.* ¶ 10. At all relevant times, he was "not paid overtime for [his] overtime work." *Id.* ¶ 11. He also attests that his tips were misappropriated, with his employer taking "the entirety of customer tips." *Id.* ¶ 13. Chen further attests that he is owed four weeks' salary ($3600), which defendants have not paid to date. *Id.* ¶ 16. He does not identify the time period for which he was not paid his salary.

Similarly, Lau attests that he worked either five or six days per week. Lau Aff. ¶¶ 4-5. From March 13 to May 31, 2019, he worked six days per week, from 11:30 to 22:00, with a one-hour break, for a total of 9.5 hours a day or 57 hours per week. He had one "non-fixed" day off each week. *Id.* ¶ 4. From June 1 to September 26, 2019, he worked five days per week, from 11:00 to 22:00, with a one-hour break, for a total of ten hours a day or 50 hours per week. *Id.* ¶ 5. During this period he had two "non-fixed" days off per week. *Id.* During the first period (March 13 - May 31), Lau was paid a flat rate of $150 per weekday and $170 per weekend day. *Id.* ¶¶ 8-9. During the second period (June 1 - September 25), he was paid $725 per week. *Id.* ¶ 10. Lau was paid by

---

[4] Since Chen only worked five days per week when he was on the late shift, the nature of this "exception" is not entirely clear. However, the Court need not resolve this issue for purposes of the pending motion.

check for certain weeks in June and July 2019. *Id.* ¶ 11. For the remainder of his employment, he was paid in cash. *Id.* ¶ 12. Lau was "not paid overtime pay for overtime work," and, like Chen, attests that his employer "retained all of the tips from the customers." *Id.* ¶¶ 13, 15.[5]

### B.   Procedural Background

Plaintiffs filed this action on December 29, 2019 alleging, *inter alia*, minimum wage and overtime violations, under both the FLSA and NYLL, against numerous corporate defendants, including Dun Huang Corp, DH Newland Corp, New York Dun Huang Inc, Lanzhou Beef Noodle Inc, John Doe Corp, and Dun Huang Newland Corp. *See* Compl. (Dkt. No. 1) ¶¶ 9-27. Plaintiffs alleged that these entities (which owned and operated restaurants at various locations, some of them under the "Dun Huang" name) constituted an "enterprise" as that term is defined by 29 U.S.C. § 203(r), and were their "joint employers." *Id.* ¶ 28. The original complaint also named numerous individual defendants, alleging that all were "officers, directors, managers and/or majority shareholders or owners" of the corporate defendants, and all were individually responsible for any unpaid wages to plaintiffs. *Id.* ¶ 15. On March 19, 2020, plaintiffs amended their complaint, again

---

[5] "The FLSA requires employers to 'pay the higher of the federal or state minimum wage applicable during any given time period.'" *Cardenas v. Edita's Bar & Rest., Inc.*, 2021 WL 4480570, at *6 (E.D.N.Y. Sept. 30, 2021) (quoting *Reyes v. Lincoln Deli Grocery Corp.*, 2018 WL 2722455, at *5 (S.D.N.Y. June 5, 2018); *see also* 29 U.S.C. § 218(a). At all times relevant to this action, the federal minimum wage, pursuant to the FLSA, was $7.25 per hour, *see* 29 U.S.C. § 206, but the New York State minimum wage, applicable to employers in New York City with 11 or more employees, was $15.00 per hour. NYLL § 652(1)(a)(i). Both the FLSA and the NYLL generally require employers to compensate an employee for hours worked in excess of forty hours a week at a rate of one and one-half times the employee's regular rate. *See* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. (NYCRR) tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime). Thus, if Chen was required to work 57 hours per week for a weekly salary of $900, he was underpaid – at least for the 57-hour weeks – regardless of whether this Court applies the "rebuttable presumption that [his] weekly salary covers [the first] 40 hours." *Moon v. Kwon*, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002) (quoting *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y.1999)). Similarly, if Lau was paid $725 per week for 50 hours of work, he was underpaid, even if "the employer and employee contracted for the weekly salary to include the overtime period." *Giles*, 41 F. Supp. 2d at 317.

listing numerous corporate and individual defendants and alleging that they formed an "enterprise," operating a "chain of noodle shops" with a common website, similar menus, "near-identical décor" and identical branding. FAC ¶ 33.

On May 9, 2020, defendant Dun Huang Corp moved to dismiss plaintiffs' minimum wage claim under the FLSA, and the other defendants moved to dismiss all of the claims against them (Dkt. No. 54), arguing (among other things) that plaintiffs, who both worked at a single location, failed to allege facts showing that any defendant other than Dun Huang Corp was their employer and similarly failed to allege facts showing that defendants constituted a "single integrated entity." (Dkt. No. 55.) On January 6, 2021, after oral argument, the Hon. George B. Daniels, United States District Judge, denied the motions of Dun Huang Corp, Li, and Lui, but dismissed plaintiffs' claims against all of the other defendants. (Dkt. No. 73.) That same day, Judge Daniels referred the case to me for general pretrial management. (Dkt. No. 72.)

On March 15, 2021, plaintiffs filed their motion for conditional collective certification, accompanied by their memorandum of law, the plaintiffs' affidavits, the proposed Notice, and related materials. On March 29, 2021, defendants filed a memorandum of law in opposition to the motion (Def. Mem.) (Dkt. No. 82), and on April 5, 2021, plaintiffs filed a reply memorandum. (Dkt. No. 83.)

## II.   DISCUSSION

### A.   Legal Standards

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become parties to such an action, employees other than the named plaintiff(s) must "opt in" by filing written consents in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to

implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts in this Circuit apply a "sensible" two-step method for determining whether to exercise this discretion. *See Myers*, 624 F.3d at 554-55. In the first step – commonly if somewhat imprecisely known as "conditional certification" – the named plaintiff must make a "'modest factual showing' that he and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *id.* at 555 (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)), at which point the trial court may send (or direct plaintiffs' counsel to send) a notice to potential opt-in plaintiffs. *Id*. At the second stage, which typically occurs after discovery has been completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiffs. *Id*. If not, the court may "de-certif[y]" the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Id*.

During the initial conditional certification stage, the requirement of a "modest factual showing" cannot be satisfied solely by the "unsupported assertions" in the plaintiffs' pleading. *Myers*, 624 F.3d at 555. However, because the purpose of this first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," plaintiffs have a low burden of proof. *Id.* (emphasis in the original); *accord Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (quoting *Wraga v. Marble Lite, Inc.*, 2006 WL 2443554, at *1-2 (E.D.N.Y. Aug. 22, 2006)) ("[A] plaintiff's burden at this preliminary stage is 'minimal.'"). A showing that plaintiffs "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed [collective]" is a sufficient basis from which to infer the "common

policy" required for conditional certification. *Cortes*, 2015 WL 7076009, at *3 (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)). Documents properly considered in this inquiry "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013) (quoting *Hamadou*, 915 F. Supp. 2d at 661). In an appropriate case, conditional collective certification may be based solely on the personal observations of one plaintiff. *See Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (granting conditional certification of collective including all tipped employees at a single Bareburger location based on one employee's declaration).

### B.    Plaintiffs' Factual Showing

As noted above, both plaintiffs attest that they were paid a flat rate (either daily or weekly) regardless of their weekly hours; that they were not paid overtime, at one and a half times their regular rate, for the hours they worked in excess of forty in a week; and that defendants misappropriated their tips. Chen Aff. ¶¶ 9, 11, 13; Lau Aff. ¶¶ 8-10, 13, 15, 18. Plaintiffs further attest that defendants did not provide them with a fixed time to take meal breaks and required them to stay "on call" during breaks, leaving them only about fifteen minutes to eat before resuming work. Chen Aff. ¶¶ 7-8; Lau Aff. ¶¶ 6-7. Lau additionally attests that he was never informed of his hourly pay rate "or any tip deductions toward the minimum wage," Lau Aff. ¶ 14; was never given wage statements, *id*. ¶ 17; and was never paid any spread-of-hours premium for shifts that lasted longer than 10 hours. *Id*. ¶ 19.[6]

---

[6] As plaintiffs acknowledge, *see* Pl. Mem. at 15, some of their allegations, such as Lau's claims regarding wage notices, wage statements, and spread-of-hours pay, are relevant only to their state law claims, which are not subject to collective certification under the FLSA. *See* NYLL § 195(3); 12 NYCRR §§ 142-2.4, 142-2.7, 142-2.18.

Both plaintiffs attest that while they were employed at the restaurant, they befriended other employees who were subject to the same or similar compensation practices and policies. Chen Aff. ¶ 17; Lau Aff. ¶ 20. Both Chen and Lau identify:

1.     Andy ("Manager of Front"), Chen Aff. ¶ 21; Lau Aff. ¶ 24;

2.     Jenny (Waitress), Chen Aff. ¶ 29; Lau Aff. ¶ 30;

3.     William (Waiter), Chen Aff. ¶ 39; Lau Aff. ¶ 40;

4.     A Cong (Appetizer Preparer), Chen Aff. ¶ 48; Lau Aff. ¶ 49;

5.     A Long (Head Chef), Chen Aff. ¶ 56; Lau Aff. ¶ 57; and

6.     Shui Ge ("water older brother" in Chinese) (Ramen Chef), Chen Aff. ¶ 62; Lau Aff. ¶ 65.

In addition to those above, Chen also identifies:

7.     Xiao Wen ("Fry Wok"), Chen Aff. ¶ 70;

8.     A Shu (Dishwasher), *id*. ¶ 76;

9.     A Jie (Vegetable Cutter/Appetizer Preparer), *id*. ¶ 80;

10.    Wu Jie/Xiao Wu ("older sister"/"little Wu" in Chinese) (Packer), *id*. ¶ 86;

11.    A Feng, Tony, and Gary (Part Time Waiters), *id*. ¶ 89.

Those of plaintiffs' co-workers who were full-time employees had schedules substantially similar to plaintiffs', in that they each worked five to six days per week, for 8.75 to 11 hours per day, or 43.75 to 60 hours per week. Chen Aff. ¶¶ 19-89; Lau Aff. ¶¶ 22-71. Further, according to plaintiffs, their co-workers "were also not paid overtime pay and minimum wages for all the hours worked more than forty (40) hours per week." Chen Aff. ¶ 17; Lau Aff. ¶ 20. According to plaintiffs, Jenny and William, who were full-time waiters, were paid flat daily rates. Jenny was paid $160 per day on weekdays and $180 per day on weekends, while William was paid $150 per day on weekdays and $170 per day on weekends. Chen Aff. ¶¶ 35, 44; Lau Aff. ¶¶ 36, 45. The part-time waiters, who worked for 9.5 hours per day for two to three days per week, were also paid

$150 per day on weekdays and $170 per day on weekends.[7] Further, according to plaintiffs, the waiters were not allowed to retain any portion of the tips that patrons left for them. Chen Aff. ¶¶ 13-14, 34, 43; Lau Aff. ¶¶ 15, 35, 44. Chen states that had defendants split tips evenly among the waiters, each waiter would have received another approximately $150 "per day." Chen Aff. ¶ 14. Andy, the Manager of Front – who supervised plaintiffs, "organiz[ed] the work scheduling of the front staffs," dealt with online orders, and sometimes worked as a cashier – was paid $900 weekly for 43.75 hours of work. Chen Aff. ¶¶ 23-24; Lau Aff. ¶¶ 24-27.

Kitchen staff were paid a fixed monthly rate, including $2500 for Wu Jie, the Packer (increased to $2600 in June 2019); $2,600 for A Cong, the Appetizer Preparer; and $3,500 for A Long, the Head Chef. Chen Aff. ¶¶ 52, 59, 67, 73, 79, 88; Lau Aff. ¶¶ 53, 61, 70. Plaintiffs are vague about the precise monthly salaries of the other kitchen staff they list.[8]

Lau attests that he knows about Andy's, Jenny's, William's, A Cong's, and A Long's compensation because he "saw some payment papers in the restaurant office," Lau Aff. ¶ 27, in September 2019, when he was about to quit. *Id.* ¶¶ 36, 54, 62. Lau adds that he knows about Shui Ge's compensation because Shui Ge told him about it during a conversation in the restaurant kitchen on an unspecified date. *Id.* ¶ 71.

---

[7] It does not appear to the Court that the compensation of the part-time waiters, as reported by plaintiff Chen, was below the required minimum wage of $15 per hour. Moreover, since they only worked two to three 9.5-hour days per week, *see* Chen Aff. ¶ 89, they were not entitled to overtime pay under the FLSA.

[8] Shui Ge, the Ramen Chef, was paid "around two thousand seven hundred dollars ($2700) to three thousand four hundred dollars ($3400) a month." Lau Aff. ¶ 70. Xiao Wen ("Fry Wok") made more than A Cong but plaintiff Chen does not know "exactly" how much he was paid. Chen Aff. ¶ 73. Similarly, A Shu, the Dishwasher, "was paid higher around two hundred dollars ($200) to three hundred dollars ($300) than A. CONG ($2600 per month) but I do not know the exact number of how much A. SHU was paid." *Id.* ¶ 79. No compensation figure or estimate is provided for A Jie, the Vegetable Cutter. *Id.* ¶¶ 80-83.

Chen attests that he is aware of Jenny's, William's, and Wu Jie's wages because they all told Chen about their compensation during conversations at work on unspecified dates. Chen Aff. ¶¶ 36, 45, 88. Chen became aware of Andy's compensation when Lau told him. *Id*. ¶ 26. Chen found out about A Cong's compensation because another (unidentified) employee "told me his salary." *Id*. ¶ 53. Later, Lau also told Chen how much A Cong made. *Id*. As noted above, plaintiffs estimate the wages of Shui Ge, Xiao Wen, and A Shui, based in part on what other workers were paid. *Id*. ¶¶ 59, 67, 73; Lau Aff. ¶ 70. Chen does not explain how he learned the wages paid to the part-time waiters. Chen Aff. ¶ 89.

### C.   Analysis

With respect to the full-time waiters and kitchen staff at Dun Huang Grand Central, plaintiffs' affidavits satisfy the "modest showing that is required of [plaintiffs] at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed [collective]." *Hernandez*, 2013 WL 3199292, at *3 (quoting *Iglesias-Mendoza*, 239 F.R.D. at 368).

"There is a 'consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations.'" *Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *4 (S.D.N.Y. May 23, 2016) (quoting *Reyes v. Nidaja, LLC*, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015)). However, plaintiffs are not required to provide "the times and dates" of the conversations, so long as a court "'can fairly infer' that other [employees] 'labored under similar working conditions and thus suffered the same violations of the FLSA.'" *Id*. (quoting *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 525 (S.D.N.Y. 2015)).

In this case, the Court may fairly so infer. As described above, plaintiffs have submitted sworn affidavits asserting that they had personal knowledge of the work schedules of a number of their coworkers and learned about their compensation either by speaking with them or, in the case of plaintiff Lau, by seeing payroll documents in the restaurant office. Assuming the truth of their attestations, they have shown that a number of employees other than themselves worked more than 40 hours per week and were compensated by means of a flat daily, weekly, or monthly wage arrangement that violated the overtime provisions (and in some instances the minimum wage provisions) of the FLSA.[9] Moreover, the affidavits include details such as the names (and/or nicknames) of the coworkers, their physical descriptions, and the circumstances of at least some of the conversations. *See Mei Rong Du v. Dingxiang Inc.*, 2020 WL 7404984, at *6 (S.D.N.Y. Dec. 17, 2020) (finding a similar sworn declaration, containing information learned from seven other employees, identified by name or nickname, about the wages they were paid and the hours they worked, sufficient to satisfy plaintiff's "modest showing"); *Cuaya v. VI Development Grp., LLC*, 2020 WL 5494371, at *5 (S.D.N.Y. Sept. 10, 2020) (conditionally certifying collective based on sworn declaration attesting that plaintiff had spoken with at least ten other employees about their wages and hours).

Defendants concede that plaintiffs have "alleged pay practices that violate the FLSA as to them individually," Def. Mem. at 1, but argue that their factual showing as to other similarly-situated employees improperly relies on "hearsay statements from co-workers, and double hearsay statements about 'some payment papers,'" *id*. at 6, citing *Jin Yun Zheng v. Good* Fortune *Supermarket Grp. (USA), Inc.*, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013). In *Zheng* – a time-

---

[9] For example, if Wu Jie was required to work 60 hours per week for a monthly salary of $2600 (which is the equivalent of a weekly salary of $600), she was paid below the prevailing minimum wage even for her first 40 hours of work per week.

shaving case, centered on plaintiff's claim that she was docked an hour's pay for lunch but was only given 30 minutes to eat – the court denied a conditional collective certification motion where the plaintiff's supporting affidavit did not identify a single co-worker (by name, nickname, description, or otherwise), and failed to explain how she "observed" that the unidentified coworkers' time was shaved in the same way that hers was. *Id*. at *5. Similarly, plaintiff could not explain how she knew that "defendants failed to provide her [unidentified] coworkers with proper pay stubs or other written notice of wages." *Id*. Here, by contrast, plaintiffs identify a total of 13 fellow employees (by position, physical description, and name or nickname), provide their schedules and wages (or, in some cases, estimates of their wages), and explain how they learned that information. In this District, moreover, "courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice." *Cuaya*, 2020 WL 5494371, at *6 (quoting *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012)).

Defendants further contend that plaintiffs have failed to demonstrate that they and the potential collective members are "similarly situated," Def. Mem. at 9, because both plaintiffs were waiters and "two of the other three waiting staff" identified in their affidavits, namely, Andy and Jenny, were "exempt executive employees," in that their primary duties were to supervise plaintiffs (and other waiters) and they made more than $455 per week. *Id*. at 10 (citing *Trimmer v. Barnes & Noble, Inc*., 31 F. Supp. 3d 618, 625 (S.D.N.Y. 2014)). Defendants make no claim, however, that they actually classified either Andy or Jenny as exempt.[10] Moreover, as noted above, "[t]he

---

[10] Workers who are "employed in a bona fide executive . . . capacity," 29 U.S.C. § 213(a)(1), are exempt from the overtime requirements of the FLSA. Under the current version of the Department of Labor regulation implementing this exemption, a worker employed in a bona fide executive capacity is an employee:

    (1) Compensated on a salary basis . . . at a rate of not less than $684 per week . . . exclusive of board, lodging or other facilities;

burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage," *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 94 (S.D.N.Y. 2020) (quoting *Lynch*, 491 F. Supp. 2d at 368), and the key question is "*whether* 'similarly situated' plaintiffs do in fact exist," *Myers*, 624 F.3d at 555, not whether every employee identified by plaintiffs will ultimately prove to qualify as such. *See also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 161 (S.D.N.Y. 2014) ("[T]he possible existence of exemptions is a merits issue that is not relevant at the conditional certification stage."). Consequently, the possibility that Manager of Front Andy was properly classified as an exempt executive employee – and the seemingly remote possibility that Waitress Jenny was properly so classified – cannot defeat plaintiffs' motion.

Defendants also take issue with plaintiffs' request to represent "'all current and former non-exempt employees'" at Dun Huang Grand Central, arguing that the proposed collective is overbroad and should be limited to "waiters" at that location. Def. Mem at 12. The Court agrees in part, but will not restrict the proposed collective solely to waiters. Plaintiffs have made a

---

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). "FLSA exemptions such as this one are to be 'narrowly construed.'" *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 395 (E.D.N.Y. 2013) (quoting *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir. 1991). Moreover, the "employer bears the burden" of proving that one or more of its employees fall within the exemption. *Martin,* 949 F.2d at 614. Thus, "[a] defendant must prove that the employee satisfies all four prongs of the regulation to be classified as exempt." *Solis*, 938 F. Supp. 2d at 396. According to plaintiffs, Andy worked as both a manager and a cashier, Lau Aff. ¶ 24, making it unclear whether his "primary duty is management," as required by the second prong of the regulation. Jenny worked "as a Waitress for the Defendants," was paid a flat daily rate, and – because she was more senior than plaintiffs by "a few months" – supervised them when Andy was "not on duty." Lau Aff. ¶¶ 30-32, 36. There is no evidence in the record that she met the first, second, or fourth prong of § 541.100(a).

minimal factual showing that both the full-time waiters and the full-time kitchen staff at Dun Huang Grand Central routinely worked more than 40 hours per week but were paid based on flat daily, weekly, or monthly rates that did not compensate them for their overtime hours at one and a half times their regular hourly rates (and in some cases did not even compensate them for all of their hours at the minimum wage). Plaintiffs make no claim, however, that any *part-time* staff were deprived of either a minimum hourly wage or overtime pay. Indeed, since by definition the part-time waiters (the only part-time employees identified in plaintiff's motion papers) did not work more than 40 hours per week, *see* Chen Aff. ¶ 89, the primary issue that binds the proposed collective together simply does not apply to them. Further, plaintiffs have presented no evidence concerning the hours or compensation of employees other than waiters and kitchen staff. Although Dun Huang Grand Central presumably employs other workers as well (such as delivery workers), plaintiffs have not made even a "minimal" factual showing as to their hours or wages. Consequently, while the Court will authorize plaintiffs to send out a notice to potential collective members, that potential collective will be limited to full-time, non-exempt waiters and full-time, non-exempt kitchen staff.

### D. Production of Potential Opt-In Plaintiff Information

Plaintiffs request that the Court direct defendants to produce an Excel spreadsheet containing contact information for the potential opt-in plaintiffs, "including but not limited to last known mailing addresses, la[st] known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, work location, dates of employment, and position," including qualifying employees who worked for defendants "from December 29, 2016 to the present day." Pl. Mem. at 17. Courts in this Circuit "commonly grant" requests for production of mailing addresses and dates of employment for the potential opt-in plaintiffs. *Cortes*, 2015 WL 7076009, at *4. Moreover, it is by now fairly clear that telephone numbers and email addresses

permit a more efficient means of providing notice than mailing addresses alone. *See, e.g.*, *Diatta v. Iguana New York Ltd.*, 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions."); *Racey*, 2016 WL 3020933, at *10 (ordering defendants to provide "a list of the names, addresses, telephone numbers, email addresses, and dates of employment for potential class members"); *Hernandez v. NGM Mgmt. Grp. LLC*, 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013) (ordering defendants to produce "a computer-readable list of the names, addresses, compensation rates, telephone numbers, and dates of employment" for all potential opt-in plaintiffs).

For the same reason, courts in this District have in some cases ordered the production of the potential opt-in plaintiffs' social media information, including WhatsApp, WeChat, and Facebook usernames. *See Qiang Lu*, 447 F. Supp. 3d at 97 (S.D.N.Y. 2020) (granting plaintiff's request for such information, despite "possible privacy concerns," because the court must consider "the possibility that some members may not have phone numbers or stable addresses"); *Ting Qui Qui v. Shanghai Cuisine Inc.*, 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (granting request for social media information); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, 2019 WL 3759126, at *12-13 (S.D.N.Y. July 25, 2019) (same). On balance, this Court agrees that the provision of social media usernames can help ensure that notice of the collective action reaches all potential opt-in plaintiffs. Defendants will therefore be required to produce to plaintiffs' counsel a spreadsheet (in Excel format if possible) containing the names, dates of employment, positions, last known mailing addresses, last known telephone numbers, last known email addresses, and last known WhatsApp, WeChat and/or Facebook usernames, of all current and former full-time, non-exempt waiters and kitchen staff employed at Dun Huang Grand Central on or after December 29, 2016.

### E.     Form, Method, and Timing of Notice

The next set of issues involves the form, method, and timing of the information to be sent to the potential opt-in plaintiffs. Plaintiffs request that the Court approve their proposed Notice, which, among other things, gives those employees 90 days to "opt in" to this action. *See* Pl. Mem. at 21; Notice at 2. Plaintiffs further request that the Court: (1) authorize plaintiffs' counsel to disseminate the Notice via mail, email, text message or social media chat, and on counsel's website, *id*. at 19-20; (2) authorize plaintiffs to publish the proposed Notice on social media and in a newspaper, at defendants' expense, should defendants fail to furnish a complete contact list or more than 20% of the Notices are returned as undeliverable; (3) require defendants to post the Notice in a conspicuous location in Dun Huang Grand Central and include it in the employees' pay envelopes, *id*. at 20; (4) authorize plaintiffs' counsel to send a reminder, via mail and email, to all individuals who have failed to respond approximately halfway through the notice period, *id*. at 21; (5) require that all Notices or posts to employees' attention be in both English and Chinese, which are "the predominant languages of the FLSA Collective," *id*. at 23; and (6) authorize equitable tolling of the statute of limitations. *Id*. at 24.

Defendants do not object to any of these requests except the request for equitable tolling, arguing that plaintiffs have not met their "burden of showing the exceptional circumstances warranting the drastic remedy of equitable tolling." Def. Mem. at 12.

### 1.     Content of Notice

 "Neither the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain." *Lee v. ABC Carpet & Home*, 2008 WL 2073932, at *1 (S.D.N.Y. May 9, 2008). "Under the FLSA, the content of the notice is left to the court's discretion." *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *accord Lopez v. JVA Indus., Inc.*, 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015)

17

(noting that the FLSA "vests the district court with broad discretion" with respect to the notice of pending litigation to be provided to potential opt-in plaintiffs).

"The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)). To that end, the notice generally should contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012). Courts in this District have also held that the notice should include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court. *Id*. at 567 (modifying proposed notice to explain such a possibility).

Here, the proposed Notice contains most of the required content, including the warning about the litigation responsibilities that may come with opting in to the collective. It also states in general terms that the cost and fees incurred by opt-in plaintiffs who choose to be represented by plaintiffs' counsel Troy Law, PLLC (Troy Law), "will be paid out of any settlement or money judgment Plaintiffs receive against Defendants," Notice at 4, and that counsel "will not receive any fee" if there is no settlement or money judgment. *Id.* The consent form appended to the Notice explains further that if there is a settlement or judgment, Troy Law "will petition the Court for

18

reasonable attorneys' fees and expenses" and will "receive a proportion of any such gross settlement or judgment amount." *Id*. at 5. While not inaccurate, this language fails adequately to convey that, upon settlement, the Court will evaluate any request for fees and costs by plaintiffs' counsel and will approve such an award only after determining that it is fair and reasonable. Plaintiffs are directed to add language to the Notice making this point clear. Likewise, although plaintiffs need not add detail as to the specific costs and expenses that may be incurred in this litigation, the Court directs them to explain how costs will be handled in the event of a judgment in favor of defendants.

Finally, the Notice must be conformed to the scope of this Memorandum and Order. As submitted to the Court, it is addressed to all "[c]urrent and former non-exempt employees employed at any time from December 29, 2016 to the present by . . . (1) DUN HUANG CORP a/k/a/ Dun Huang Corporation d/b/a/ Dun Huang East Village d/b/a Dun Huang Grand Central, located at 320 Lexington Avenue, New York, NY 10016; (2) YANG LUI; (3) SHIYANG LUI." For the reasons discussed above, the Notice must be limited to current and former full-time, non-exempt waiters and kitchen staff who work or worked at Dun Huang Grand Central within the relevant period. The Court observes that the use of multiple corporate names (confusingly separated by terms like a/k/a" and "d/b/a"), including the names of corporations that are no longer defendants herein, could lead readers to believe, erroneously, that the proposed collective extends to employees who worked at restaurants other than Dun Huang Grand Central. Plaintiffs' counsel shall remove the excess verbiage and clearly address the Notice to the collective defined herein.

### 2.    Notice Period

The statute of limitations under the FLSA is three years for willful violations and two years for non-willful violations. 29 U.S.C. § 255(a). Here, plaintiffs allege willful violations, *see* FAC ¶¶ 36-76; consequently, they request that the notice period begin three years prior to the filing of

their initial complaint (that is, that the Notice go to eligible workers who were employed at the restaurant on or after December 29, 2016). Pl. Mem. at 22-23.

In this Circuit, courts routinely calculate the notice period from the date on which the lawsuit was filed (not the date of conditional certification), "with the understanding that challenges to the timeliness of individual plaintiff's actions will be entertained at a later date." *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 116-17 (S.D.N.Y. 2015) (quoting *Hamadou*, 915 F. Supp. 2d at 668, and collecting cases). Defendants do not dispute this point. Nor do they object to the three-year look-back from the date on which the case was filed. Consequently, defendants must provide contact information for, and the Notice (once revised in accordance with this Memorandum and Order) may be sent to, all current and former full-time, non-exempt waiters and kitchen staff who work or worked at Dun Huang Grand Central from December 29, 2016 to the present.

### 3.    Opt-in Period

The standard opt-in period in this Circuit, following conditional certification and dissemination of an appropriate notice, is 60 days. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) ("[c]ourts in this Circuit routinely restrict the opt-in period to sixty days") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases)). Plaintiffs request a longer opt-in period (90 days), but make no substantive argument for why 90 days is required here. The Court does not see why a 90-day opt in period is required here and, therefore, the opt-in period is reduced to 60 days. *See Yap*, 146 F. Supp. 3d at 566-67 (reducing opt-in period from 90 to 60 days where plaintiffs failed to demonstrate "special circumstances" that would warrant more than the standard 60-day opt-in period); *Whitehorn*, 767 F. Supp. 2d at 451-52 (reducing FLSA notice period from 90 to 60 days

where defendants objected to longer notice period and plaintiff did not explain why an extended period was necessary). Troy Law must modify the Notice and consent form accordingly.

### 4.    Methods of Notice

Plaintiffs propose sending the Notice to members of the collective in Chinese as well as English. Pl. Mem. at 1, 20-21. "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (quoting *Colon v. Major Perry Street Corp.*, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013)); *accord Sanchez v. El Rancho Sports Bar Corp.*, 2014 WL 1998236, at *5 (S.D.N.Y. May 13, 2014) (Spanish-language notice forms permitted). Here, plaintiffs attest that many of their coworkers are from Chinese-speaking countries and identify them by their Chinese honorifics or nicknames. Lau Aff. ¶¶ 28, 38, 47, 55, 63; Chen Aff. ¶¶ 27, 37, 46, 54, 60, 68, 74, 80, 84. Under these circumstances, the Court agrees that plaintiffs' counsel should have the Notice translated into Chinese and disseminate it in both English and Chinese.

Plaintiffs also request (with no objection from defendants) that the Court: (1) authorize plaintiffs' counsel to disseminate the Notice via mail, email, text message or social media chat, and on counsel's website and on social media groups; (2) authorize plaintiffs' to publish the proposed Notice on social media and in a newspaper, at defendants expense, should defendants fail to furnish a complete contact list or more than 20% of the Notices are returned as undeliverable; (3) require defendants to post the Notice in a conspicuous location in the restaurant and include it in employees' pay envelopes; and (4) authorize plaintiffs' counsel to send a reminder, via mail and email, to all individuals who have failed to respond approximately halfway through the notice period. Pl. Mem. at 19-21. For the reasons that follow, the Court will grant some of these requests.

The Court agrees that disseminating the Notice by mail, email, text message, and social media chat (addressed specifically to members of the proposed collective) is appropriate. *See*

*Qiang Lu*, 447 F. Supp. 3d at 97; *Huer Huang v. Shanghai City Corp.*, 2020 WL 5849099, at *16 (S.D.N.Y. Oct. 1, 2020) (permitting notice on social media because "[s]ocial media is now used to convey all kinds of important messages to the populace and has become an important means of receiving information") (collecting cases). Additionally, the Notice may be posted on plaintiffs' counsel's website, *see Qiang Lu*, 447 F. Supp. 3d at 97 (permitting such posting), and must be displayed in a conspicuous location, convenient to employees, at Dun Huang Grand Central. *See Whitehorn*, 767 F. Supp. 2d at 449 (requiring posting of notice in defendants' restaurants over defendants' objections that such postings would "unnecessarily disturb their business"); *Trinidad*, 962 F. Supp. 2d at 564 (ordering defendants to post notice "in a non-public area" of six restaurant locations, noting that "Courts in this Circuit frequently approve posting in the workplace," and collecting cases).

However, the Court will not require defendants to include the Notice in the employees' pay envelopes. Plaintiff does not cite any Second Circuit authority for such a requirement, and courts in this Circuit have been wary of permitting this form of dissemination, as it "may suggest either that the notice originates with the employer or that filling it out may actually be required or expected by the employer." *Diaz v. New York Paving Inc.*, 340 F. Supp. 3d 372, 388 (S.D.N.Y. 2018); *see also Li Ni v. Red Tiger Dumpling House Inc.*, 2020 WL 7078533, at *12 (E.D.N.Y. Nov. 30, 2020) (denying plaintiff's request to disseminate the Notice in pay envelopes or with paycheck information because the court could not "locate any Second Circuit decision to date which states or suggests that providing notice through pay envelopes may be an appropriate method of dissemination in certain situations"); *Du*, 2020 WL 7404984, at *12 (same); *Chui v. Am. Yuexianggui of LI LLC*, 2020 WL 3618892, at *11 (E.D.N.Y. July 2, 2020) (same).

Nor will the Court authorize plaintiffs' counsel to post a short form of the Notice on public social media groups or chats. Posting on public social media groups (unlike personalized social media messages) "would be overbroad and not likely to materially improve the chances of notice" to a relatively small group of workers, all of whom were employed at a single restaurant location. *Zhang v. Ichiban Grp.*, *LLC*, 2020 WL 1030651, at *11 (N.D.N.Y. Mar. 3, 2020) (quoting *Qian Xiong Lin*, 2019 WL 5842798, at *5); *see also Yuefeng Shi v. TL & CG Inc.*, 2020 WL 4586359, at *5 (S.D.N.Y. Aug. 10, 2020) (permitting distribution of notice by social media message only).

The Court rejects as premature plaintiffs' request to publish the proposed Notice on social media and in a newspaper if defendants fail to furnish a complete contact list or if more than 20% of the Notices are returned as undeliverable. *See, e.g., Lijun Geng v. Shu Han Ju Restaurant II Corp.*, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 6, 2019) (rejecting identical request on the basis that it was premature); *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, 2019 WL 699179, at *14 (S.D.N.Y. May 16, 2019) (same). If plaintiffs have concerns regarding the adequacy of the contact information produced by defendants or the deliverability of the Notice (whether on paper or electronically), they may renew this request at an appropriate time.

Finally, with respect to sending reminders via mail and email halfway through the opt-in period, the Court grants plaintiffs' request. *See Chhab v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 135926, at *51 (S.D.N.Y. Sept. 19, 2013) (collecting cases).

### F.    Equitable Tolling

Ordinarily, the statute of limitations in an FLSA collective action "continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit." *Whitehorn*, 767 F. Supp. 2d at 449; 29 U.S.C. § 256. In such a case, equitable tolling may be warranted to avoid "inequitable circumstances" where plaintiffs have acted with reasonable diligence in pursuing their claims," but where "a substantial number of

class members may now be time-barred through no fault of counsel or the class representative." *Jackson*, 298 F.R.D. at 170.

Here, perhaps anticipating a finding of "inequitable circumstances," plaintiffs proactively seek equitable tolling of the statute of limitations, for all potential opt-in plaintiffs, "for 90 days" or "until the expiration of the Opt-In Period." Pl. Mem. at 24.[11] That request is premature. At present, this case does not present the kind of "rare and exceptional circumstances" that would merit equitable tolling. *Andon v. SDG Props., Inc.*, 2018 WL 3970910, at *3 (S.D.N.Y. Aug. 20, 2018) ("Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights.") (internal quotations omitted). Because "the application of the equitable tolling standard is 'highly case-specific,' and the 'burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,'" *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017) (quoting *Wilder v. U.S. Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 90 (S.D.N.Y. 2016)), equitable tolling is generally not appropriate at the conditional certification stage.

The Court's ruling on this point is without prejudice to a later application for equitable tolling by one or more individual plaintiffs, should the situation so warrant. *See, e.g., Cuaya*, 2020 WL 5494371, at *13-14 (denying equitable tolling without prejudice because plaintiff "failed to allege that any potential opt-in plaintiff exists 'who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights'").

---

[11] The Court presumes (although plaintiffs' brief does not expressly say so) that the proposed tolling period would begin with the publication of the Notice.

### III.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional collective certification is GRANTED as to full-time, non-exempt waiters and kitchen staff employed at Dun Huang Grand Central on or after December 29, 2016.

It is hereby ORDERED that, no later than two weeks from the date of this Memorandum and Order:

1.    Defendants shall produce a spreadsheet, in Excel if possible, containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, dates of employment, and positions of all full-time, non-exempt waiters and kitchen staff employed at Dun Huang Grand Central on or after December 29, 2016; and

2.    The parties shall, after meeting and conferring, prepare and submit to the Court, for approval, a revised form of Notice (including the related opt-in form) incorporating the Court's rulings.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 79.

Dated: New York, New York
            November 8, 2021                         **SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**